UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LEZLIE J. GUNN,

Plaintiff(s),

v.

CHRISTINE E. DRAGE,

Defendant(s).

Case No. 2:19-CV-2102 JCM (EJY)

ORDER

Presently before the court is defendant Christine Drage's ("Drage") motion to strike and/or dismiss all causes of action in plaintiff Lezlie Gunn's ("Gunn") complaint. (ECF No. 28). Gunn filed a response (ECF No. 48), to which Drage replied (ECF No. 51).

Also before the court is Drage's motion for leave to supplement her motion to strike. (ECF No. 34). Gunn has not filed a response and the time to do so has passed.

**I.       Background**

The present case concerns Drage's alleged interference with a release and settlement agreement ("RSA") between Lezlie Gunn and non-party Dr. Hans Peter Wild ("Wild"). Drage is an attorney wo has served as legal counsel for Wild personally, for Wild's companies, and for Gunn personally. (ECF No. 1 at 11). In 2011, Drage specifically represented Wild Affiliated Holdings, Inc., a Nevada corporation owned by Wild. (ECF No. 28 at 4).

Gunn and Wild "maintained a close personal and professional relationship" for thirty years, during which time Gunn served as Wild's informal chief business advisor. (ECF No. 1 at 11). In late 2015, Gunn and Wild ended their personal and professional relationship and entered into the RSA. *Id.* The RSA required Wild to make payments to Gunn for a variety of expenses

and required Gunn to release Wild from any present or future legal action between Gunn and Wild or his estate. *Id.*

According to Gunn, Wild partially performed his obligations but has also breached many financial promises included in the RSA. *Id.* at 12. Gunn alleges that in late 2017, Drage learned of the RSA as she developed a personal relationship with Wild. *Id.* Gunn further alleges that Drage persuaded Wild to breach the RSA for her own financial gain. *Id.*

According to Drage, Gunn and Wild continued their relationship until July 2017, at which point the two had a falling out. (ECF No. 28 at 6). This falling out escalated in August 2016, when Gunn informed Wild she planned to sue him for his failure to pay her as required by the RSA. (ECF No. 33-5 at 5).

Drage alleges that Wild contacted her on October 15, 2016, to inform Drage that he was no longer responsible for paying Gunn's legal fees with Drage's law firm. (ECF No. 28 at 8). Drage further alleges that she informed Wild that she had not been in contact with Gunn, at which point Wild retained Drage and her law firm to represent him concerning future proceedings relating to Gunn. *Id.*

Since October 2016, Gunn, Wild, and Drage have been embroiled in a variety of legal disputes, several of which have been heard in this court. *Id.* at 9–10. One such action, *Casun Invest, A.G. v. Ponder et al.* was filed in this court on December 16, 2016. Case No. 2:16-cv-02925. According to Drage, Gunn learned of Drage's personal relationship with Wild in October 2017, at which point she immediately requested emails between Drage and Wild relating to Gunn through discovery in *Casun*. (ECF No. 28 at 11).

In *Casun*, this court ultimately denied Gunn's discovery requests and sanctioned Gunn for overly broad use of discovery. (ECF No. 32-2). Within two months, Gunn initiated the instant suit directly against Drage in California state court, where it was subsequently removed and then transferred to this court. (ECF Nos. 1, 17).

Gunn now alleges that Drage used her personal relationship with Wild to intentionally interfere with the RSA. (ECF No. 1 at 13). Gunn further alleges that between one and ten unknown individuals engaged in a civil conspiracy with Drage to intentionally interfere with the

RSA. *Id.* at 14. Drage responds by claiming this suit is a strategic lawsuit against public participation, and files a special anti-SLAPP motion to strike each claim against her. (ECF No. 28).

**II.    Legal Standard**

   **A.  Special motion to strike**

A strategic lawsuit against public participation, SLAPP for short, is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Bradbury v. Superior Court*, 57 Cal. Rptr. 2d 207, 210 (Cal. Ct. App. 1996) (citation omitted).

California's "anti-SLAPP" statute allows defendants to file "'[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike . . . .'" *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, 121 Cal. Rptr. 2d 794, 799–800 (2002) (quoting Cal. Code Civ. Pro. § 425.16(b)(1)).

Anti-SLAPP motions are adjudicated in two stages. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 694 (Cal. 2002). Protected activity includes "any action based on protected speech or petitioning activity as defined in [Cal. Code Civ. Pro § 425.16] . . . ." *City of Santa Monica v. Stewart*, 24 Cal. Rptr. 3d 72, 95 (Cal. Ct. App. 2005).

If the defendant meets its burden, then the court must determine "whether the plaintiff has demonstrated a probability of prevailing on the claim." Cal. Code Civ. Pro § 425.16(b)(1). "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Steed v. Dep't of Consumer Affairs*, 138 Cal. Rptr. 3d 519, 525 (Cal. Ct. App. 2012) (quoting *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002)).

When discussing how to conduct this analysis in *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, the Ninth Circuit held as follows:

**James C. Mahan**
**U.S. District Judge**

- 3 -

> Once it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a "reasonable probability" of prevailing in its claims for those claims to survive dismissal. To do this, the plaintiff must demonstrate that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019) (citations omitted) ("*Planned Parenthood*").

Thus, the court determines applies two different standards depending on the basis of the anti-SLAPP motion. On one hand, "[i]f a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) . . . ." *Id.* at 834. On the other hand, "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Id.*

**B. Summary judgement**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

James C. Mahan
U.S. District Judge

- 5 -

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

As an initial matter, the court grants Drage's unopposed motion for leave to supplement her motion to strike. (ECF No. 34). *See* LR 7-2(d). Further, because the instant suit transferred from a California federal court applying California substantive law, this court reviews the Anti-SLAPP motion under California substantive law.[1] *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990).

Drage challenges the factual sufficiency of Gunn's complaint. (ECF Nos. 34-4 at 22, 48 at 23). Specifically, Drage alleges that Gunn will be unable to prove the elements of her conspiracy claim or her intentional-interference-with-contractual-relations claim. (ECF Nos. 34-4 at 22–24, 51 at 10). Thus, the court applies the summary judgement standard established by Federal Rule of Civil Procedure 56. *See Planned Parenthood*, 890 F.3d at 834.

#### A. Protected activity

As the moving party, Drage must prove an attorney-client relationship existed with evidence that would entitle Drage to directed verdict if the evidence went uncontroverted at trial. *Darden Rests*, 213 F.3d at 480. Drage argues that all communications between Drage and Wild were protected because Wild retained Drage as legal counsel on October 15, 2016. (ECF No. 28 at 8–9). Gunn argues that Drage's activity is not protected because Drage cannot prove an attorney-client relationship existed between Drage and Wild. (ECF No. 48 at 4–9).

---

[1] Gunn also brings her anti-SLAPP motion pursuant to Nevada law. (*See* ECF No. 28). Notably, Nevada and California's anti-SLAPP jurisprudence are functionally equivalent to one another. *See* Nev. Rev. Stat. §§ 41.637, 41.660, 41.665; *Pope v. Fellhauer*, 437 P.3d 171 (Nev. 2019).

James C. Mahan
U.S. District Judge

- 6 -

Drage provides a single citation to her own December 27, 2019, declaration to support her claim that Wild retained Drage as an attorney. (ECF No. 28 at 8–9). In her declaration, Drage provides that "[a]fter Dr. Wild learned that I had not been in contact with Gunn, Dr. Wild retained W&D and I as legal counsel to provide legal services . . . relating to Gunn." (ECF No. 29-1 at 4).

This evidence may be admissible should Drage take the stand at trial, but it is completely contradicted by all other evidence provided by the parties. For instance, while Drage alleges that Wild retained her law firm, "W&D," Gunn provides declarations from Jean Weil, founder of W&D, and Jay Weil, former chief financial officer of W&D, which indicate that neither individual ever saw paperwork indicating that Wild retained their law firm in 2016 or beyond. (ECF Nos. 48-1, 48-2).

Drage's attached exhibits do little to bolster her claim. Drage claims that she and Wild were engaged in a professional and romantic relationship. (ECF No. 28 at 10). However, in a March 21, 2019, deposition, Wild indicated that he did not have a female lawyer. (ECF No. 29-6 at 4). Instead, Wild indicated that he engaged solely in a romantic relationship with Drage. *Id.* at 5. Further, while Drage claims Wild retained her and her firm, she provides no retainer agreement or other evidence showing any kind of legal agreement between her and Wild.

This conflicting evidence establishes a genuine issue of material fact. Thus, Drage's contention that her attorney-client privilege necessarily makes her conduct protected activity fails.

Yet, Drage need not establish an attorney-client relationship to prove that her conduct is protected. Under California Code of Civil Proceedure § 425.16, communications that are "preparatory to or in anticipation of bringing of an action or other official proceeding" are protected conduct. *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 569 (Cal. 1999); *see also Bel Air Internet, LLC v. Morales*, 230 Cal. Rptr. 3d 71, 83 (Cal. Ct. App. 2018); *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 393 (Cal. Ct. App. 2008). Conduct preparatory to litigation includes counseling or encouraging others to engage in litigation. *Bel Air Internet*, 230 Cal. Rptr. 3d at 83. Similarly, a lawyer's specific advice to a prospective client on potential

- 7 -

litigation is protected conduct. *Taheri Law Grp. v. Evans*, 72 Cal. Rptr. 3d 847, 855 (Cal. Ct. App. 2008).

Communications preparatory to litigation are protected if litigation was already "contemplated in good faith and under serious consideration" when the communications were made. *Neville*, 73 Cal. Rptr. 3d at 393 (quoting *Rhode v. Wolf*, 64 Cal. Rptr. 3d 348, 354 (Cal. Ct. App. 2007)). However, litigation need only be contemplated by the petitioning party, not by the recipient of the communication. *Bel Air Internet*, 230 Cal. Rptr. 3d 71, 86–87.

Here, assuming *arguendo* that Drage's conduct rises to the level of intentional interference, Drage's communications are still that of an attorney with a prospective client regarding potential litigation.[2] Accordingly, Drage's communications to Wild relating to potential litigation regarding the RSA are within the category of "statements made in connection with or in preparation of litigation." *Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal. Rptr. 3d 712, 716 (Cal. Ct. App. 2006); *see Taheri Law Grp. v. Evans*, 72 Cal. Rptr. 3d 847, 852–53 (Cal. Ct. App. 2008).

Accordingly, Drage's communications are protected so long as Drage contemplated litigation in good faith when the communications occurred. *See Taheri Law Group*, 72 Cal. Rptr. 3d at 853–54. To that point, Drage provides declarations from herself and a third party, George Naegeli, supporting her claim that Wild was contemplating in good faith a lawsuit against Gunn surrounding the RSA. (ECF Nos. 29-1, 29-7).

Wild's contemplation is further supported by Gunn telling Wild in August 2016, that she planned to sue Wild over terms of the RSA. (ECF No. 33-5 at 5). This information indicates that Wild anticipated litigation when he reached out to Drage just two months later to clarify he would no longer pay Gunn's legal fees. (ECF No. 29-4).

Drage indicates that she had no knowledge of the RSA before Wild reached out to her in 2016. (ECF No. 28 at 8). Any communications between Wild and Drage regarding the RSA were thus necessarily driven by Wild's anticipation of litigation. Accordingly, Drage's alleged

---

[2] If Drage cannot be said to be Wild's attorney for attorney-client privilege purposes, her legal advice to a non-lawyer certainly constitutes communications with a potential client concerning potential litigation.

advice for Wild to breach the RSA occurred as a part of Drage's serious consideration of potential litigation. Therefore, Drage's alleged communications are protected conduct. *See Taheri Law Group*, 72 Cal. Rptr. 3d at 853–54.

Thus, Drage meets her burden to show her conduct is protected. The court now turns to whether Gunn shows a reasonable probability she will prevail on her claims.

**B. Probability of prevailing on the claim**

*1. Civil conspiracy to interfere with a contract*

Alone, a civil conspiracy does no harm and carries no liability. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994). To be actionable, a civil conspiracy must be accompanied by an actual tort. *Id.* Thus, under California law, the elements of civil conspiracy are: (1) the formation of the conspiracy, (2) the operation of the conspiracy, and (3) damage to plaintiff from an act or acts done in furtherance of the conspiracy. *Id.*

Here, Gunn provides no evidence that there was, in fact, a conspiracy. Instead, Gunn's complaint simply alleges that Gunn believes between one and ten individuals engaged in a civil conspiracy to interfere with Gunn's contractual rights. (ECF No. 1 at 14). In response to Drage's special motion to dismiss, Gunn does not even mention the word "conspiracy," let alone attempt to prove any of the claim's elements. (ECF No. 48). Further, Gunn has yet to provide evidence pointing to the identity of any of the ten "Does" included in her complaint.

Thus, Gunn is does not show a reasonable probability she will prevail on her civil conspiracy claim and the court dismisses the claim accordingly.

*2. Intentional-interference-with-contractual-relations claim*

Under California law, a claim for intentional interference with a contract requires the plaintiff to prove: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990).

Although the parties do not dispute that the RSA was a valid contract between Gunn and Wild, (*see* ECF Nos. 28, 48), Drage argues that Gunn is unable to prove any of the remaining elements. (ECF No. 51 at 10).

As to element two, Drage does not deny that she knew of the RSA when she communicated with Wild in 2016. (ECF No. 28 at 8). In fact, Drage claims that Wild hired her to represent her in litigation surrounding the RSA. *Id.* Thus, the second element is met. As to element four, Gunn provides evidence that Wild did not pay her in accordance with the RSA. (ECF No. 48-1 at 12). Wild's failure to make payments in accordance with the RSA is an actual breach, which satisfies the fourth element. (ECF No. 1 at 17). As to the fifth element, Gunn provides evidence that she has suffered financial damage due to Wild's breach. (ECF No. 48 at 11).

The central issue is whether Gunn shows a reasonable probability she will prove element three, that Drage intentionally acted to induce a breach of the RSA. Drage argues that element three contains a "but for" causation requirement, placing the burden on Gunn to prove that but for Drage's conduct, Wild would have never breached the RSA. (ECF No. 28 at 24).

"It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege [and prove] that the contract would otherwise have been performed . . . ." *Hahn v. Diaz-Barba*, 125 Cal. Rptr. 3d 242, 258 (Cal. Ct. App. 2011) (quoting *Dryden v. Tri-Valley Growers*, 135 Cal. Rptr. 720, 725 (Cal. Ct. App. 1977)). Further, intentional interference does not require that the defendant's primary purpose be to disrupt the contract, it is enough that she knows interference is substantially certain as a result of her action. *Quelimane Co. v. Stewart Title Guaranty Co.*, 960 P.2d 513, 531 (Cal. 1998).

To prove element three, Gunn alleges that she received information from Ben Schroeder, a banker with UBS who managed accounts for Wild. (ECF No. 48 at 10). According to Gunn, Schroeder informed her on three separate occasions that Drage leveraged her personal relationship with Wild to interfere with the RSA. *Id.* Specifically, Gunn alleges that Schroeder informed her that "Wild's girlfriend, who Mr. Schroeder described as an attorney, had persuaded Wild to not fulfill his obligation under the RSA." *Id.*

In support of these allegations, Gunn cites solely to her own declaration. (ECF No. 48-1 at 10–13). While the court may consider information in an inadmissible form under summary judgment standard analysis, the information within that evidence must be admissible at trial. *See Fraser*, 342 F.3d at 1036. To that point, Drage has already challenged Schroeder's statements in Gunn's declaration and response as hearsay. (ECF No. 51 at 10).

"[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). To survive a motion for summary judgment, Gunn "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Here, Gunn states that she was "informed" of Wild's girlfriend and her alleged inducement by Dr. Schroeder. (ECF No. 48 at 10). Gunn does not claim that she received information from any other source that led her to believe Drage intentionally interfered with the RSA. Gunn provides no declaration from Schroeder, no indication that Schroeder will be called as a witness, and no non-hearsay proof that he made these statements at all. Instead, Gunn's entire claim rests on her own declaration. (ECF No. 48-1 at 10–13).

As Schroeder's communications are statements made out of court, and Gunn intends to use them for the truth of the matter asserted—that Wild's girlfriend, who was an attorney, induced Wild's breach of the RSA—the statements are hearsay. Fed. R. Evid. 801. There are, of course, several exceptions to the hearsay rule of evidence. *See generally* Fed. R. Evid. 803, 804, 807. However, Gunn does not argue that Schroeder's statements fall within any exception.

Nor is there any indication that Schroeder's testimony would be admissible at trial. Gunn provides that "[a]ccording to Mr. Schroeder, Mr. Wild's girlfriend . . . was the catalyst behind Mr. Wild's decision to breach the RSA." (ECF No. 48-1 at 12). Yet, Gunn fails to provide any

information as to how or why Schroeder developed this opinion[3] and thus fails to provide anything which leads the court to believe the information would be admissible at trial.

Given the evidence before the court, there is no reasonable probability that Schroeder's statements will be admissible as evidence at trial. Without Schroeder's statements made to Gunn, there is no evidence that Drage intentionally acted to interfere with the RSA, nor is there evidence that Wild wouldn't have breached the RSA but for Drage's conduct.

To the contrary, there is evidence from Gunn herself that Drage's interference could not have caused Wild's breach. In Gunn's complaint in yet another action concerning Wild, she alleges that Wild breached the RSA several times before June 2016, four months before Drage and Wild contacted each other.[4] (ECF No. 33-7 at 6). Gunn's own contradictory timeline fatally undermines the already limited evidence in favor of Gunn's claim that Drage intended to induce Wild into breaching the RSA where he otherwise would not have.

At best, Gunn has provided a mere scintilla of evidence that does little more than show some metaphysical doubt as to the material facts, which is insufficient to survive the anti-SLAPP motion. *See Anderson*, 477 U.S. at 252. Accordingly, there is no genuine dispute of material fact as to element three and Gunn does not show a reasonable probability of succeeding on her claim.

Thus, Gunn's intentional-interference-with-contractual-relations claim is dismissed.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Christine Drage's motion for leave to supplement her motion to strike (ECF No. 34) be, and the same hereby is, GRANTED.

---

[3] If Schroeder developed his belief through his own observations and nothing more, his testimony would be speculative. If Schroeder developed his belief through Mr. Wild's statements to him, but Mr. Wild is unavailable to testify, his testimony is still hearsay.

[4] Unlike Schroeder's statements, Drage may admit Gunn's prior statements at trial under Fed. R. Evid. 801(d)(2).

1    IT IS FURTHER ORDERED that Drage's motion to strike (ECF No. 28) be, and the
2    same hereby is, GRANTED.
3    DATED April 10, 2020.

_____
UNITED STATES DISTRICT JUDGE